IN THE MATTER OF JOSEPH W. GALLAGHER, AN ATTORNEY AT LAW.

April 13, 1984.

## ORDER

This matter having come before the Court on an order to show cause why JOSEPH W. GALLAGHER of JERSEY CITY should not be disbarred or otherwise disciplined for his violation of *DR.* 7–101(A)(2), *DR.* 6–101(A)(2) and misappropriation of clients' funds, and good cause appearing;

It is ORDERED that the Report of the Disciplinary Review Board recommending that respondent be disbarred is hereby adopted; and it is further

ORDERED that JOSEPH W. GALLAGHER be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that JOSEPH W. GALLAGHER be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that JOSEPH W. GALLAGHER comply with Administrative Guideline No. 23 of the Office of Attorney Ethics regarding suspended, disbarred or resigned attorneys; and it is further

ORDERED that JOSEPH W. GALLAGHER reimburse the Office of Attorney Ethics for administrative costs, including production of transcripts.

Decision and Recommendation of the Disciplinary
Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey:

This matter is before the Board based upon a presentment filed by the District VI Ethics Committee which concerns numerous instances of misappropriation of client funds by respondent together with his failure to carry out contracts of employment.

The individual complaints upon which the presentment is based may be summarized as follows:

## I. A. RUDOWSKI COMPLAINT

In September of 1977, the respondent was retained by Violet Rudowski to represent her in a divorce action. Over the next several months, Ms. Rudowski paid the respondent a total of $3,000 for his fee. Additionally, on July 10, 1978, Ms. Rudowski gave the respondent $700, which represented the cash surrender value of life insurance policy, to be held in escrow by respondent pending agreement between Ms. Rudowski and her husband as to distribution of property. On January 19, 1979, Ms. Rudowski appeared at the court hearing on her divorce action with substituted counsel, since respondent was temporarily suspended from the practice of law on August 21, 1978. Although Ms. Rudowski's new attorney was able to obtain much of her file from the respondent, the escrow funds were never returned, nor did respondent return the unearned portion, approximately $1,500, of the $3,000 paid for his fee, although he had promised to do so.

Ms. Rudowski then had to pay substitute counsel $1,500 to complete the divorce action.

The District VI Ethics Committee found that the respondent misappropriated the $700 which was to be held in escrow for Ms. Rudowski. The Clients' Security Fund paid to Ms. Rudowski $653 in satisfaction of her claim against the respondent in September of 1979.

### B. JOUBERT COMPLAINT

Elizabeth Joubert retained the respondent in November of 1977 to represent her in a divorce action. At that time, she paid $500 toward his fee. The complaint for divorce was not filed and served on Ms. Joubert's husband for several months. In July of 1978, respondent represented to Ms. Joubert that a court date was anticipated for August or September, and requested an additional $500 payment, which Ms. Joubert made. Although her divorce hearing was set for September, she received written notice prior thereto that the respondent had been suspended from the practice of law. Ms. Joubert then went to respondent's office and met with respondent. He advised that his suspension was temporary and since he would be reinstated soon Ms. Joubert could either find a new attorney or wait for his reinstatement. She was in touch with him until January, when another court date was arranged. She did not seek other counsel until that date approached. At that time, since respondent had taken virtually no action on her behalf, she had to pay an additional $1,500 to substitute counsel for her divorce. She was unable to obtain a return of any of the funds paid to respondent.

The District VI Ethics Committee found specifically that respondent did little or no work in return for the $1,000 paid to him by Ms. Joubert.

### C. WAYNE COMPLAINT

The respondent was retained on July 26, 1977 by John Wayne to represent him in an action to set aside a judgment. Mr. Wayne paid $1,000 to the respondent at that time. Mr. Wayne

did not see the respondent thereafter. According to the complainant's testimony, the respondent sent substituted counsel to court with the complainant. The District VI Ethics Committee determined that the respondent had rendered little or no services on behalf of the complainant.

### D. WASIELEWSKI COMPLAINT

Beginning in March of 1978, the respondent represented Mary Wasielewski in the sale of property owned by her in Jersey City. He prepared a contract for sale, which was signed by the purchaser, and received a $1,700 deposit from the purchaser to be held in escrow. Closing was delayed by the respondent for some time. On two occasions, the complainant arrived at the respondent's office on the day allegedly set for closing only to learn that no closing had been scheduled. The respondent was then suspended from the practice of law and the complainant thereafter sought other counsel to assist her in the sale of her property.

The Clients' Security Fund awarded the complainant $1,700 in satisfaction of her claim against the respondent.

The District VI Ethics Committee concluded that the respondent misappropriated the $1,700 which was to be held in trust by him.

### E. MACELLARO COMPLAINT

In April of 1978, the respondent represented Louis Macellaro and his wife in the sale of property owned by them in East Brunswick, New Jersey. In accordance with that representation, the respondent received a deposit from the purchaser of $1,950 which was to be held in escrow by respondent. Subsequent to closing on the property, the respondent issued a trust account check in the amount of $1,950 to Louis Macellaro which was returned by the bank for insufficient funds. Respondent failed and refused to comply with his client's request for return of the funds.

In the fall of 1979, the Clients' Security Fund paid $975 each to Mr. and Mrs. Macellaro in satisfaction of their claim against the respondent.

The Committee did not reach a conclusion as to respondent's ethical violations in this case since Mr. Macellaro did not testify.

## F. GARNICA COMPLAINT

In May of 1978, the respondent represented Victor Garnica in the purchase of a home. To that end, Mr. Garnica gave respondent $2,900 as the deposit on the premises, together with an additional amount for closing fees and title insurance. At the time closing was held, it was necessary for Mr. Garnica to obtain an additional amount for a deposit on the premises since respondent had misappropriated the funds. The respondent, through counsel, later returned $250 to the complainant.

The Committee did not reach a conclusion as to respondent's ethical violations in this case since Mr. Garnica did not testify.

The Clients' Security Fund awarded $3,212 to the complainant in satisfaction of his claim against respondent following both notice and an opportunity to be heard to respondent's counsel.

Although the formal consolidated ethics complaint filed against respondent on October 22, 1982 charged the respondent with misconduct in four (*Howard, Bosania, Urfer* and *Rotella*) additional matters, no testimony was taken, exhibits introduced or conclusions reached on these complaints by the Committee.

## II. ALLISON MATTER

On May 15, 1978, the respondent issued Check # 233 on his attorney trust account in the amount of $1,000 payable to the law firm of Haskins, Robottom & Hack. The monies were to be paid on behalf of Richard Simeone pursuant to Order of the Court in the case of *Simeone v. Simeone*. That check was, however, returned twice for insufficient funds. The Division of Ethics and Professional Services (then Central Ethics) was notified on June 16, 1978 of this occurrence. A demand letter to produce attorney accounts and records was then forwarded to

the respondent on June 26, 1978. The respondent failed to comply with this demand letter, and a motion for his temporary suspension from the practice of law was made to the Disciplinary Review Board simultaneous with the filing of a formal complaint with the District VI Ethics Committee. That complaint charged the respondent with misappropriation of the $1,000 in trust funds in the *Simeone* case and further charged a refusal to cooperate or comply with the demand letter sent by Central Ethics. By letter dated September 8, 1978, the respondent, by his attorney, admitted to the charges in the two count formal complaint and consented to continuation of his temporary suspension. The respondent thereby admitted to violations of *DR* 9–102 and *DR* 1–102, as charged by the complaint. No hearings were held on this matter subsequent to respondent's formal admission of misconduct.

### III. CLIENTS' SECURITY FUND CLAIMS

Since the respondent's temporary suspension from the practice of law, the Clients' Security Fund has paid out a total of $52,541.36 on claims filed against the respondent, as follows:

| | Claimant | Amount | When Paid |
|---|---|---|---|
| 1. | Rudowski | $ 653.00 | 9/17/79 |
| 2. | Matus | 886.59 | 12/21/79 |
| 3. | Macellaro, Louis | 975.00 | 9/17/79 |
| | Macellaro, Winifred | 975.00 | 10/19/79 |
| 4. | Santuoso | 4,251.00 | 11/16/79 |
| 5. | Wasielewski | 1,700.00 | 11/16/79 |
| 6. | Garnica | 3,212.00 | 11/16/79 |
| 7. | Rotella | 8,994.77 | 4/21/80 |
| 8. | Bakaien | 500.00 | 6/27/80 |
| 9. | Bargowski | 30,000.00 | 7/25/80 |
| 10. | Maruci | 220.00 | 9/5/80 |
| 11. | Giaquinto | 175.00 | 4/30/81 |

As noted, *supra,* a number of these successful claimants also pursued ethics complaints against the respondent. For example, the *Macellaro, Wasielewski, Garnica* and *Rudowski* matters are

incorporated in the presentment filed by the District VI Ethics Committee. The circumstances of certain of the more substantial Clients' Security Fund awards are discussed below.

## A. ROTELLA CLAIM

The respondent represented James Rotella in a matrimonial action. The marital premises was sold pursuant to a judgment of divorce, and respondent was to hold in escrow his client's share of the proceeds, which amounted to $10,993.77. The respondent returned $2,000 to his client prior to his suspension from the practice of law. However, he did not return the remaining $8,993.77 to his client. By letter dated November 13, 1979 to Mr. Rotella's new attorney, respondent's counsel stated that respondent no longer had the escrow funds of Mr. Rotella.

The Clients' Security Fund thereafter awarded $8,993.77 to Mr. Rotella. Although an ethics complaint was filed in this matter, and was made a part of the consolidated formal ethics complaint, no testimony was taken in this matter, nor did the District VI Ethics Committee reach any conclusions in this case.

## B. SANTUOSO CLAIM

The respondent represented Frank Santuoso in his divorce action. As a result of the dissolution of the marriage, certain property was to be sold. The respondent received a $500 deposit for the purchase of that property from one LaCorte, a prospective buyer. However, the price was too low, and the property was thereafter sold to Santuoso's daughter for $7,500. Mr. Santuoso's share was given to the respondent to hold for Mr. Santuoso and was deposited into respondent's trust account on August 8, 1978. Not only did the respondent fail to pay over the $3,751 due to Mr. Santuoso, he also refused to return the $500 deposit to LaCorte. Mr. Santuoso then repaid the $500 to LaCorte. The Clients' Security Fund therefore made payment in the amount of $4,251 to Frank Santuoso. No ethics complaint was ever filed in this case.

## C. BARGOWSKI CLAIM

The claimant, Theresa Bargowski, and her husband David retained the respondent to create a trust fund for their four grandchildren. To that end, they gave the respondent a total of $35,500 between July and December of 1977. The respondent failed to create such a trust fund and failed to return the money to the Bargowskis. The Clients' Security Fund awarded the then maximum amount of $15,000 to Mrs. Bargowski and an additional $15,000 to the Estate of David Bargowski.

An ethics complaint was never filed in this case.

## IV. NOTICE

Numerous attempts were made to notify the respondent of the proceedings pending before the Clients' Security Fund, the District VI Ethics Committee and the Disciplinary Review Board. With regard to the Clients' Security Fund proceedings, the respondent was put on notice of each claim, either through his attorney or at his last known address, and was given an opportunity to be heard. Similarly, respondent was notified of hearings scheduled before the District VI Ethics Committee and the Disciplinary Review Board by service to his last known address, which is his aunt's home. Nonetheless, he failed to appear before either Committee.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Committee in finding respondent guilty of unethical conduct are fully supported by clear and convincing evidence. In *Joubert, Wayne, Rudowski* and *Wasielewski*, the respondent failed to carry out contracts of employment with each client in violation of *DR* 7–101(A)(2), and with regard to these matters, exhibited a pattern of neglect in violation of *DR* 6–101(A)(2). Even more egregious is his extensive misappropriation of funds from numerous clients as determined in the presentment of the District VI Ethics Committee with regard to *Rudowski* and *Wasielewski.* It is clear that respondent also

misappropriated the funds entrusted to him by both *Garnica* and *Macellaro*. The Clients' Security Fund awards in these matters and an additional six cases elevates the total misappropriated by the respondent to more than $52,000. Respondent has offered no defense for his actions, nor has he made his clients or the Fund whole. Although respondent's misconduct occurred prior to the case of *In re Wilson*, 81 *N.J.* 451 (1979), the sentiments expressed in that case are wholly applicable here:

"The attorney has stolen his clients' money. No clearer wrong suffered by a client at the hands of one he had every reason to trust can be imagined. The public is entitled, not as a matter of satisfying unjustifiable expectations, but as a simple matter of maintaining confidence, to know that never again will that person be a lawyer." 81 *N.J.* 451, 456.

The Board therefore recommends that the respondent be disbarred.

The Board further recommends that the respondent be required to reimburse the Office of Attorney Ethics for administrative costs, including production of transcripts.